UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

THADDEAS VONDERRICK BICKHAM,

      Plaintiff,

Case No. 1:05-CV-18

v.

Hon. Richard Alan Enslen

CITY OF GRAND RAPIDS, *et al.*,

**OPINION**

      Defendant.
_____/

    Presently pending before this Court is Defendants Spectrum Health, Martin P. Freeman, Kenneth Gritter, and Jennifer E. Krause's Motion for Summary Judgment. Plaintiff Thaddeas Vonderrick Bickham has responded in opposition to the Motion. Oral argument is unnecessary in view of the briefing.

    **FACTUAL BACKGROUND**

    This suit was filed in January 2006 by Plaintiff and alleges violation of 42 U.S.C. § 1983 and Plaintiff's Fourth, Fourteenth and Eighth Amendment rights on August 14, 2002. On that date, Plaintiff was arrested by Grand Rapids police during the execution of a search warrant at 1733 Eastern Ave. S.E., Grand Rapids, Michigan. (Defs.' Br., Ex. A at 1-2.) At that time, an ambulance was summoned because Plaintiff was vomiting and had difficulty breathing, and was suspected of ingesting cocaine. (*Id.*, Defs.' Br., Ex. B at 2; Martin Freeman, M.D. Aff. ¶¶ 3-5.) Plaintiff was transported by ambulance to the private hospital operated by Defendant Spectrum Health and there treated. (*Id.*)

    At this point, there are two divergent testimonies as to what occurred. The health care Defendants' version of events is as follows: Once Plaintiff arrived at the emergency room, he was

agitated and uncooperative, and spat at medical staff. (Freeman Aff. ¶ 7.)  He was restrained by medical staff and given Haloperidol to facilitate his treatment. (*Id.*)  Because medical staff was concerned about a potential cocaine overdose and because Plaintiff was non-communicative, medical staff utilized a urine catheter to perform a drug screen. (*Id.*)  When the drug screen was positive for cocaine and marijuana, Plaintiff was given charcoal through the use of an nasogastric tube to treat the cocaine ingestion. (*Id.*)  All such treatment was delivered consistent with reasonable medical judgments based on the patient's medical condition. (*Id.* at ¶ 10.)  At no time was hospital staff directed or controlled by law enforcement, nor was medical testing done for any law enforcement purposes. (*Id.* at ¶¶ 7-10.)

Plaintiff somewhat contradicts Defendants' version of events.  He states, "I did not ingest cocaine on August 14, 2002.  I tried to explain this fact to both the arresting officers and later medical personnel before and while I was being subjected to the forced procedures.  All of the Defendants either assisted in holding me down while the procedures were performed or actually inserted the tubes into my body." (Bickham Decl. ¶ 3.)  In addition, Plaintiff argues that he was acquitted by Judge Quist of cocaine base distribution in part because the trial evidence did not show a strong connection between him and the cocaine base at the searched residence. (Trial Tr., Pl.'s Ex. 1, at 234.)  Judge Quist also stated that scientific inference did not support that Plaintiff had ingested cocaine at the time of the search because, among other reasons, his vomit was never tested. (*Id.*)  In saying so, Judge Quist noted that the drug screen evidence (a positive cocaine urine finding) was used against Bickham at trial. (*Id.*)

What is not disputed on this medical record is that the treating personnel were emergency room staff (*see* Freeman Aff. ¶ 4) as opposed to state contracted medical service providers.  It is also

2

uncontradicted that the medical care provided was done so as a result of the independent medical judgment of Dr. Freeman, the supervising physician. (*See* Freeman Aff. ¶ 9.)

## **STANDARDS FOR SUMMARY JUDGMENT**

Defendants' Motion is brought pursuant to Federal Rule of Civil Procedure 56. Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

In assessing evidence, credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**LEGAL ANALYSIS**

In this case, the use of restraints and the medical care delivered cannot provide a basis for section 1983 liability for two distinct but related reasons. First, there is insufficient evidence of state action. While the United States Supreme Court in *West v. Atkins*, 487 U.S. 42, 54-57 (1988) applied section 1983 liability to contract physicians and medical staff, it has not done so as to purely private hospitals and physicians providing emergency services. *See Blum v. Yaretsky,* 457 U.S. 991, 1011 (1982) (holding that a decision of a private nursing home to discharge patients was not state action); *see also Crowder v. Conlan*, 740 F.2d 447, 450 (6th Cir. 1984) (holding that there was no state action as to a private hospital's medical privilege decision); *Rudy v. Village of Sparta*, 990 F. Supp. 924, 927 (W.D. Mich. 1996) (holding that private physicians cannot be liable under section 1983 for ordering emergency medical procedures based upon their independent medical judgments); *contra Conner v. Donnelly*, 42 F.3d 220, 226 (4th Cir. 1994); *Williams v. Payne*, 73 F. Supp. 2d 785, 799 (E.D. Mich. 1999).

Second, this is a case, such as *Rudy*, in which the private physician supervising the treatment made treatment decisions not premised on the state's desire for evidence, but rather based upon his own medical judgment. (*See* Freeman Aff. ¶ 9.) Though such medical judgment may or may not have been mistaken, there is no basis for attributing the conduct to the state or attributing an unconstitutional motive to the attending physician. This is simply not a case such as *Rochin v. California*, 342 U.S. 164, 166 (1952) and *Williams v. Payne*, 73 F. Supp. 2d 785 (E.D. Mich. 1999), wherein stomach pumping was used, without a warrant, to obtain evidence of a crime. Rather, this is a case in which a physician made an independent medical judgment as to medical treatment not involving pumping the stomach contents for the purpose of attempting to save the life and health of

an emergency room patient. As such, summary judgment shall enter in favor of the medical care providers.

## **CONCLUSION**

Defendants' Motion shall be granted and Partial Judgment shall enter in favor of the medical care providers.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>    June 12, 2006 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |